UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROY W. ROBERTS,<br><br>              Plaintiff,<br><br>vs.<br><br>RANDY BLADES, SCOTT LOSSMANN, CORIZON MEDICAL SERVICES, GARTH GULICK,, GLEN BABICH, DR. YOUNG,<br><br>              Defendants. | Case No. 1:13-cv-00312-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court in this prisoner civil rights action is Defendant Randy Blades' Motion to Dismiss for Failure to State a Claim, which is now fully briefed. (Dkt. 26, 29, 30.) Having reviewed the parties' briefing, and the record before the Court, the Court concludes that oral argument is unnecessary. Accordingly, the Court enters the following Order.

## CONSIDERATION OF MOTION TO DISMISS

**1.    Applicable Standards of Law**

The Prison Litigation Reform Act (PLRA)[1] requires the Court to screen all pro se prisoner complaints to determine whether they have stated a claim upon which relief can

---

[1] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

**MEMORANDUM DECISION AND ORDER - 1**

be granted before such complaints are served on the defendants. 28 U.S.C. §§ 1915 & 1915A. The Court uses a liberal construction standard in the screening process.

The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir.1989).[2] Where claims appear plausible and supported by at least some particular factual allegations, the Court weighs the potential utility of requiring the prisoner to submit an amended complaint against the reality that it may be impossible for the prisoner to submit a pleading that is more detailed than the first, given that prisoners have few legal resources and that much of the evidence they need to support their claims is in the hands of jail officials. After weighing these issues, the Court at times permits claims teetering on the edge of Rule 8 standards to proceed to summary judgment—a stage of litigation where all the evidence is before the Court, and a review of the potential merits of the claims can be accomplished.

Not every questionable claim must wait for summary judgment to be fleshed out, however. The Court retains screening authority to dismiss claims at any time during the litigation under §1915(e).[3] The Court also has the authority to seek additional information from the parties to assess Plaintiff's claims during the screening process. The Court may

---

[2] The 12(b)(6) authority to dismiss claims as explained in *Jackson* was expanded by the PLRA, giving courts power to dismiss such claims sua sponte and prior to service of process, as explained in *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

[3] "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss [an in forma pauperis] case at any time if the court determines that . . . the action or appeal . . . is frivolous or malicious. . . [or] fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B).

**MEMORANDUM DECISION AND ORDER - 2**

exercise its discretion to require an amended complaint, a *Watson* questionnaire,[4] a *Spears* hearing,[5] or a *Martinez* report.[6]

The Court's authority to screen pro se prisoner complaints and review prison records often makes the filing of a Rule 12 motion to dismiss—which is designed to test a pleading *without* additional evidentiary support—unnecessary. *See* Fed. R. Civ. P. 12. Where judicial efficiency is served by the Court requiring the plaintiff to provide such items at the outset of the case, the Court can exercise that option.

Where Defendants bring a pre-discovery motion to dismiss, the Court generally will not dismiss prisoner claims that have survived initial review, unless Defendants convincingly argue that, under a liberal construction of the pleadings, there is a lack of any cognizable legal theory or a failure to plead sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).[7] To survive summary dismissal, a complaint must contain sufficient factual matter,

---

[4] In *Watson v. Ault*, 525 F.2d 886, 892 (5th Cir. 1976), the Court determined: "The employment of a form questionnaire is a useful means by which the court can develop the factual basis for the prisoner's complaint."

[5] In *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), the court authorized an evidentiary hearing in the nature of a Fed.R.Civ.P.12(e) motion for a more definite statement. The hearings were held to supplement questionnaires sent to prisoners to elaborate on vague pleadings. The questions and answers had been considered the equivalent of a response to a 12(e) motion.

[6] In *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), the trial court ordered (before answer) that the prison officials conduct an investigation of the incident to include an interrogation of those concerned, and file a report with the court, to enable the court to decide the jurisdictional issues and make a determination under section 1915(a). *Id*. at 319. The Ninth Circuit approved of the use of *Martinez* reports in *In re Arizona*, 528 F.3d 652, 659 (9th Cir. 2008).

[7] *Balistreri* was overruled on other grounds by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007), to the extent that *Balistreri* followed the rule that, "[a] complaint should not be dismissed under Rule 12(b) (6) 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" 901 F.2d at 699 (citing *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)).

**MEMORANDUM DECISION AND ORDER - 3**

accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In exercising its discretion to summarily dismiss claims on its own motion or by motion of the defendants, the Court takes into consideration that, in any case, and more so in pro se cases, the law requires that plaintiffs be given an opportunity to amend their pleadings to remedy any deficiencies that were identified during screening or after a motion to dismiss has been adjudicated, unless amendment would be futile. *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002) ("It is not unreasonable that plaintiffs may seek amendment after an adverse ruling, and in the normal course district courts should freely grant leave to amend when a viable case may be presented."); *see also Lopez v. Smith*, 203 F.3d 1122, 1128-30 (9th Cir. 2000) (A pro se litigant bringing a civil rights suit must have an opportunity to amend the complaint to overcome deficiencies unless it is clear that they cannot be overcome by amendment, because, while Congress's intent in requiring screening is "to curb meritless lawsuits," meritorious lawsuits should not be "swept away in the process.").

Where a party submits evidence beyond the pleadings, the Court may (1) consider it as a supplement to the Complaint under its § 1915 screening authority to determine whether Plaintiff has stated or could state a claim; or (2) convert a Rule 12 motion into a Rule 56 motion for summary judgment, after giving the parties notice and an opportunity to respond before making a ruling on the motion. Fed. R. Civ. P. 12(d). Full or limited discovery also may be warranted. Under Rule 56, where assertions of fact or objections to another party's assertion of facts are not properly supported or addressed, the Court may

**MEMORANDUM DECISION AND ORDER - 4**

bring the deficiency to the attention of the parties and give them an opportunity to supplement their briefing and evidence, or may issue any other appropriate order. Fed. R. Civ. P. 56(e)(1).

The Supreme Court has instructed that rulings on the qualified immunity defense "should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive," because the defense is "an immunity from suit rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). A motion to dismiss on grounds of qualified immunity may be granted where the allegations on the face of the Complaint, taken as true, are sufficient to show that the qualified immunity test is met. *See Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1997). However, an opportunity to amend to state a plausible claim must be provided to a plaintiff if qualified immunity is asserted in a motion to dismiss. *See Moss v. U.S. Secret Service*, 572 F.3d 962, 974-75 (9th Cir. 2009). Where extra-record evidence is proffered or required to determine the facts at hand, qualified immunity must be asserted in a summary judgment motion. *Id*.

In § 1983 actions, the doctrine of qualified immunity protects state officials from personal liability for on-the-job conduct so long as the conduct is objectively reasonable and does not violate clearly-established federal rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). A qualified immunity analysis consists of two prongs: (1) whether the facts as alleged by plaintiff establish a violation of a constitutional right, and (2) whether that right was clearly established given the state of

the law at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009), citing *Saucier v. Katz*, 533 U.S. at 201.

      2.    **Background**

Plaintiff has alleged that the medical defendants in this case refuse to properly treat his severe pain or schedule him for back surgery. He has alleged that Corizon "has a policy or custom of not providing proper pain relief medication to the inmates of the Idaho State Department of Corrections. (Dkt. 8, p. 2.) He alleges that Corizon removed 98% of pain medication from the Idaho inmates at the Idaho State Correctional Institution (ISCI) and replaced those pain medications with psychotropic drugs that left Plaintiff in unbearable pain for over a year. (*Id.*, p. 3.)

Plaintiff also has alleged that Warden Randy Blades is intimately involved in the oversight and review of Corizon's provision of medical treatment of ISCI Inmates as a result of the *Balla v. Idaho* class action lawsuit, which addressed some of the same issues that Plaintiff raises here. *See Balla v. Idaho*, 1:81-cv-00165-BLW. Plaintiff has submitted the affidavits of several class action representatives, who declare that Plaintiff's particular problems were discussed at a *Balla* Case Monitoring Meeting where Warden Blades was present. (Dkt. 29-1, 29-2.)

In response to the Motion to Dismiss, Plaintiff has provided notes from a *Balla* Case Monitoring Meeting from August 2013. (Dkt. 31.) It appears that Plaintiff attempted to highlight notes from a portion of the meeting where his medical problems were discussed; unfortunately, when the highlighted page was copied, the words under the

highlighting became unreadable.[8] (Dkt. 31-1, p. 7.) Other portions of the notes, however, show that Warden Blades was aware of and very involved with the content of the meeting, offering to follow up regarding medical care for the inmates and issues that were discussed. A few references include the following:

> Page 1: "Warden Blades also stated that was incorrect and it will be dealt with."
>
> Page 2: "Warden Blades would like Mr. Beals to send him a concern also."
>
> Page 3: "Warden Blades stated he will look into it."
>
> Page 6: "Warden Blades was not aware of that, and will look into it."

(Dkt. 31-1, *Balla* Case Monitoring Meeting Notes.)

### 3. Discussion

Plaintiff has alleged that Warden Blades did nothing to aid his medical problems after being briefed on them. While Warden Blades has no direct supervisory authority over Corizon medical staff, he is ultimately responsible for the health and welfare of inmates in his prison, and has authority to make or order additional inquiries into an inmate's health care complaints that are brought to his attention.

The Court concludes that Plaintiff has stated a claim against Warden Blades. In *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011), the United States Court of Appeals for the Ninth Circuit clarified how to show a causal connection between a supervisor and an alleged violation, including that the supervisor participated in: (1) "setting in motion a series of acts by others"; (2) "knowingly refus[ing] to terminate a series of acts by others,

---

[8] At this stage, it is sufficient that Plaintiff has submitted the affidavits of two inmates who attended the meeting and who can testify that Warden Blades was at the *Balla* Meeting and that Plaintiff's problems were discussed there. Plaintiff should submit a non-highlighted copy of this record, however, on summary judgment and at trial.

**MEMORANDUM DECISION AND ORDER - 7**

which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury"; (3) failing to act or improperly acting in "the training, supervision, or control of his subordinates"; (4) "acquiesc[ing] in the constitutional deprivation"; or (5) engaging in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205-09 (internal quotations and punctuation omitted).

Plaintiff alleges that Warden Blades had notice of Plaintiff's ongoing problem and did not do anything further to solve his problem. This is enough to infer deliberate indifference—knowledge, plus a conscious disregard of an allegedly serious health need. Non-medical prison personnel are generally entitled to rely on the opinions of medical professionals with respect to appropriate medical treatment of an inmate. However, if "a reasonable person would likely determine [the medical treatment] to be inferior," the fact that an official is not medically trained will not shield that official from liability for deliberate indifference. *Snow v. McDaniel*, 681 F.3d 978, 986 (9th Cir. 2012);[9] *see also McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013) (stating that non-medical personnel may rely on medical opinions of health care professionals unless "they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner.") (internal quotation marks omitted). In addition, if an inmate continues to complain after he has had treatment, officials who ignore the continuing

---

[9] *Snow* was overruled in part on other grounds by *Peralta v. Dillard*, 744 F.3d 1076 (2014) (medical provider who lacked authority over budgeting decisions was entitled to a jury instruction that the jury could consider, for purposes of the claim for damages against him personally, whether prison resources were such that it was impossible for him to provide the care the inmate needed, but prospective injunctive relief claims against such a defendant in his official capacity remain viable).

**MEMORANDUM DECISION AND ORDER - 8**

complaints may be deliberately indifferent. *Cooper v. Dyke*, 814 F.2d 941, 945-46 (4th Cir. 1987).

Other courts are in agreement. If an alleged constitutional violation is ongoing, and a supervisory official reviewing the inmate's report of a problem has the duty and authority to review the propriety of the medical treatment and take action to remedy the alleged deficiencies (not necessarily by providing medical care himself, but by obtaining the answer to whether the medical care was proper from a person with medical training and directing a remedy to be implemented), then a cause of action lies, because the defendant "knew of an ongoing constitutional violation and . . . had the authority and opportunity to prevent the ongoing violation," under supervisory liability principles applicable to § 1983 actions. *See Herrera v. Hall*, 2010 WL 2791586 at *4 (E.D. Cal. 2010) (citing *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)).

Stated differently, where claims are asserted against persons who supervise the provision of prison medical care, the question is not whether the supervisor was "directly involved" in the plaintiff's diagnosis, but whether the plaintiff has sufficiently alleged or provided evidence from which a jury could find that the supervisor's knowing failure to address the treating provider's deficient care rendered Plaintiff's medical treatment constitutionally inadequate. *See Gonzalez v. Ahmed*, 2014 WL 4444292, at *8 (N.D. Cal. 2014). For example, in *Gonzalez*, summary judgment was denied as to the supervisory liability of Dr. Chudy in reviewing Dr. Ahmed's care of Plaintiff under the following circumstances:

**MEMORANDUM DECISION AND ORDER - 9**

> Under Plaintiff's version of the facts, Dr. Ahmed flatly refused to examine him because Dr. Ahmed was tired at the end of the day. Plaintiff further alleges that Dr. Chudy and Dr. Sepulveda knew that Dr. Ahmed had denied Plaintiff care, but nonetheless ordered Plaintiff to return to Dr. Ahmed's care.

*Id.* at *8.

In *Gonzalez*, the court determined that Plaintiff's complaints to Dr. Chudy were not merely about past health care, but "referred to an ongoing and substantial risk to his health, and requested that Dr. Ahmed's actions be investigated so as to prevent future incidents." *Id*. The court further denied Dr. Chudy's request for application of qualified immunity, reasoning that, "under Plaintiff's version of the facts, a prison official could not reasonably believe that forcing Plaintiff to return to Dr. Ahmed's care unsupervised would not be an effective denial of, or intentional interference with, Plaintiff's necessary medical treatment." *Id*. at *9; *see also Jett v. Penner*, 439 F.3d 1091, 1096, 1098 (9th Cir. 2006) ("As prison administrators, Dr. Peterson and [Warden] Cheryl Pliler are liable for deliberate indifference when they knowingly fail to respond to an inmate's requests for help.").

Based on all of the foregoing, Plaintiff will be permitted to proceed to the discovery and summary judgment stages on his claims against Warden Blades in his personal or individual capacity for damages purposes. For the same reasons, the Court concludes that Warden Blades' qualified immunity argument fails on *Saucier*'s first prong (whether the facts alleged by Plaintiff, if true, establish a violation of a constitutional right), but it may be reasserted at the summary judgment stage, if appropriate.

**MEMORANDUM DECISION AND ORDER - 10**

The Court agrees with Defendant Warden Blades that Plaintiff has not asserted an official capacity claim against Warden Blades for injunctive relief purposes in the Amended Complaint (Dkt. 8), and Plaintiff has already received the surgery that he requested from prison officials. Thus the Court clarifies that the Eighth Amendment claim against Warden Blades is in his personal or individual capacity for damages purposes only, and no official capacity claim lies.

## ORDER

**IT IS ORDERED** that Defendant Blades' Motion to Dismiss for Failure to State a Claim (Dkt. 26) is GRANTED in part as to any claim against Warden Blades in his official capacity, and DENIED in part as to any damages claims against Warden Blades in his individual capacity; and Plaintiff's Motion for Enlargement of Time to File Response (Dkt. 28) is GRANTED. The Response filed at Dkt. 29 is considered timely.

**IT IS FURTHER ORDERED** that the following pretrial schedule shall govern this action:

1. **<u>Disclosure of Relevant Information and Documents:</u>** If the parties have not already done so, no later than 30 days after entry of this Order, the parties shall provide each other with relevant information and documents pertaining to the claims and defenses in this case, including the names of individuals likely to have discoverable information, along with the subject of the information, as well as any relevant documents in their possession, in a redacted form if necessary for security or privilege purposes; and, if necessary, they shall provide a security/privilege log sufficiently describing any undisclosed relevant documents which are alleged to be

subject to nondisclosure. Any party may request that the Court conduct an in camera review of withheld documents or information. In camera documents are to be filed ex parte under seal, and not provided by email or mail.

2. **Service**. All un-served Defendants must be served no later than **60 days** after entry of this Order, or claims against them will be dismissed.

3. **Amendment of Complaint**. Any proposed amended complaints, with accompanying motions, must be filed no later than **90 days** after entry of this Order.

4. **Completion of Discovery and Requests for Subpoenas:** All discovery shall be completed no later than **180 days** after entry of this Order. Discovery requests must be made far enough in advance to allow *completion* of the discovery in accordance with the applicable federal rules *prior* to this discovery cut-off date. Discovery is exchanged between parties, not filed with the Court. The Court is not involved in discovery unless the parties are unable to work out their differences between themselves as to whether the discovery responses are appropriate. In addition, all requests for subpoenas duces tecum (pretrial production of documents by nonparties) must be made within **150 days** after entry of this Order. No requests for subpoenas duces tecum will be entertained after that date. (Subpoena requests for trial appearances of witnesses shall not be filed until the case is set for trial.) To obtain a subpoena duces tecum for production of documents by nonparties, Plaintiff must first submit to the Court the names, addresses, and the type of information sought from each person or entity to be subpoenaed, and

Plaintiff must explain the relevance of the items requested to the claims. The Court will then determine whether the subpoenas should issue.

5. **Depositions**: Depositions, if any, shall be completed no later than **180 days after entry of this Order**. If Defendants wish to take the deposition of Plaintiff or other witnesses who are incarcerated, leave to do so is hereby granted. Any such depositions shall be preceded by **10 days'** written notice to all parties and deponents. The parties and counsel shall be professional and courteous to one another during the depositions. The court reporter, who is not a representative of Defendants, will be present to record all of the words spoken by Plaintiff (or other deponent), counsel, and any other persons at the deposition. If Plaintiff (or another deponent) wishes to ensure that the court reporter did not make mistakes in transcribing the deposition into a written form, then Plaintiff can request the opportunity to read and sign the deposition, noting any discrepancies between what is transcribed and what Plaintiff believes was said. If Plaintiff wishes to take depositions, Plaintiff must file a motion requesting permission to do so, specifically showing the ability to comply with the applicable Federal Rules of Civil Procedure by providing the names of the proposed persons to be deposed, the name and address of the court reporter who will take the deposition, the estimated cost for the court reporter's time and the recording, and the source of funds for payment of the cost.

6. **Dispositive Motions:** All motions for summary judgment and other potentially dispositive motions shall be filed with accompanying briefs no later than **210 days**

**after entry of this Order**. Responsive briefs to such motions shall be filed within **30 days** after service of motions. Reply briefs, if any, shall be filed within **14 days** after service of responses. All motions, responses, and replies shall conform to Rule 7.1 of the Local Rules for the District of Idaho**. Neither party shall file supplemental responses, replies, affidavits, or other filings not authorized by the Local Rules without prior leave of Court. No motion or memorandum, typed or handwritten, shall exceed 20 pages in length.** Submission of a motion for summary judgment addressing procedural issues does not foreclose any party from later filing a motion for summary judgment on the merits.

7. **Alternative Dispute Resolution (ADR)**. Should Plaintiff and any Defendant wish to attend a settlement conference, they should file a stipulation to attend settlement conference, and the case shall then be referred to the Court's ADR Director.

DATED: December 15, 2014

_____
B. Lynn Winmill
Chief Judge
United States District Court