IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROY W. ROBERTS,<br><br>    Plaintiff,<br><br>    v.<br><br>RANDY BLADES; DR. SCOTT LOSSMAN; CORIZON MEDICAL SERVICES; DR. GARTH GULICK; DR. GLEN BABICH; DR. MURRAY YOUNG,<br><br>    Defendants. | Case No.  1:13-CV-312-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion for summary judgment filed by five of the six defendants, and a motion to take judicial notice filed by plaintiff. The motions are fully briefed and at issue. For the reasons explained below, the Court will grant both motions.

## LITIGATION BACKGROUND

Plaintiff Roy Roberts, an inmate at the Idaho State Correctional Institution (ISCI), claims that jail officials were deliberately indifferent to his back pain. While he has suffered from back problems for years, he alleges his intense pain started on January 26, 2012, when he slipped on some ice. He claims that medical professionals working at the jail ignored his pain and delayed surgery for almost two years. He brings this § 1983 action to recover damages for the pain he endured while his surgery was delayed.

In his complaint, Roberts sued (1) Randy Blades, the ISCI Warden; (2) Corizon Medical Services, the company providing medical services at the ISCI; and (3) four

physicians with Corizon who worked at the ISCI, Dr. Scott Lossman, Dr. Garth Gulick, Dr. Glen Babich, and Dr. Murray Young. All of the defendants except Randy Blades have moved for summary judgment. The Court will address the motion after reviewing the facts.

## FACTS

### History of Back Pain

Roberts has a lengthy history of back pain prior to 2012. He had three previous lumbar surgeries by 1979. *See MR000023.* In 2002 he had a laminectomy. *See MR000008.* Those surgeries did not cure his back pain, and the record shows treatment for back problems in 2006, s*ee MR000003* (referring to 2006 X-ray), and then in June and December of 2008, when he was treated for back spasms and back pain. *See MR000006-7.* In 2009, he "had an injection in his back," *see MR000008,* and in 2010, an X-ray showed some degenerative narrowing in his spine*. See MR000005*.

In August of 2011, Roberts was again receiving medical care for low back pain. During this examination, the X-ray was taken, and the radiologist compared it with an X-ray taken in 2006, finding little difference, other than a mild progression of a degenerative arthritic condition. *See MR000003*.

### Slip & Fall

On January 26, 2012, Roberts slipped on the ice. He alleges that from that date until his surgery on December 17, 2013, he "was in pain and suffering." *See Roberts Affidavit (Dkt. No. 36-1)* at ¶ 3. He claims that he was in such pain at times that he could not walk to the cafeteria and that he "missed at least one meal each day." *Id.* at ¶ 20. On

**Memorandum Decision & Order – page 2**

some days, he missed all his meals because of the pain. *Id.* He alleges that "[a]ll of the named defendants knew that I was in such extreme pain, and each of the defendants did nothing to properly give to me the necessary surgery that was needed to help my condition." *Id.* at ¶ 12. The record reflects that Roberts made numerous written complaints about his back pain to prison staff. *See Exhibits (Dkt. Nos. 3-3, 3-4)).*

**Treatment**

About two weeks after his fall, on February 13, 2012, Roberts had an X-ray on his lumbar spine. Dr. Jacob Cambier, a diagnostic radiologist practicing with Blue Mountain Diagnostic Imaging, Inc., examined this X-ray and compared it to an earlier X-ray of Robert's back from August of 2011. He found "no change" between the two X-rays. More specifically, he found no fracture or alignment abnormality, and no evidence of bone disease or "injury in the lower T-spine." *See MR 000002.*

In December of 2012, Dr. Babich, the Regional Medical Director for Corizon at the ISCI, approved an MRI for Roberts, and that was done on January 29, 2013. *See Babich Affidavit, supra* at ¶¶ 15, 17. An MRI can reveal whether there is a narrowing of the spine – a condition called stenosis – that can pinch nerves and cause intense back and leg pain. In reading the MRI, Dr. William Taylor saw evidence of stenosis. *See MR000046-47.* Dr. Babich saw the same thing, but saw no pinched nerves, and so concluded that "surgery was not indicated at that time." *Id.* at ¶ 17.

About a month later, on February 26, 2013, Roberts was seen by Dr. Shane Andrew, an orthopedic surgeon at Saint Alphonsus Medical Group. Dr. Andrews read the same MRI and also saw stenosis, but recommended three epidural steroid injections

**Memorandum Decision & Order – page 3**

instead of surgery.  *See MR000031*.  Epidurals are "commonly attempted before resorting to surgery."  *See Babich Affidavit, supra,* at ¶ 19.  This was the case here:  The physician notes state that the "surgeon is trying to avoid a surgical intervention and so has sent the patient for lumbar epidural injection."  *See MR000029.*

During this time, Dr. Babich prescribed the following drugs for Roberts:  (1) aspirin, (2) Neurontin, (3) Mobic, and (4) Effexor.  Effexor "is an antidepressant that is also commonly used to treat chronic pain."  *Id.* at ¶ 13.  Neurontin "is an anticonvulsant originally used to treat epilepsy, and now commonly used to relieve mild neuropathic pain."  *Id.* at ¶ 10.  Mobic is a nonsteroidal anti-inflammatory drug used "to reduce inflammation and pain."  *Id.* at ¶ 6.

These drugs were doing little to reduce Roberts' pain, and so Roberts was seen again by Dr. Andrew on April 10, 2013.  *See MR000029.*  Dr. Andrew noted that Roberts described his pain (on a scale of 1 to 10, with 10 being the worst) as between a 4 and an 8, with the pain becoming worse with activity and lifting.  *Id.*  Dr. Andrews administered the first of three planned epidurals on that visit.  *Id.*

Roberts got about 5 days of relief, but then the pain returned.  *See Babich Affidavit, supra* at ¶ 24.  Roberts wanted surgery, but Dr. Babich rejected that request on the ground that two additional epidural injections remained to be given, and that all three "were required before they could be considered a failure."  *Id*. at ¶ 25.  Dr. Babich also rejected surgery on the grounds that the MRI had shown no nerve impingement and Roberts' past back surgeries had offered no long-lasting relief.  *Id.*  He approved a treatment plan that included the same medications along with a transcutaneous electrical

**Memorandum Decision & Order – page 4**

nerve stipulation unit, known by its acronym as a TENS unit. This device, commonly used to treat pain, uses "an electric current to over-stimulate the nerves and causes them to shut down." *Id.* Roberts received his TENS unit on May 17, 2013. *Id.*

Dr. Babich was not willing to prescribe narcotics for Roberts at this time. *Id.* at ¶ 26. He explained that "narcotics are highly addictive, lose their effectiveness over time, can create hypersensitivity syndrome that enhances pain over time, and create security issues in a prison setting." *Id.* Moreover, he was waiting to see what effect could be gained with three epidurals. *Id.* at ¶ 25.

Defendant Dr. Murray Young replaced Dr. Babich as Regional Medical Director in June of 2013. *Id.* at ¶ 27. Roberts alleges that he was told by Dr. Young that based on the most recent MRI, Roberts had "mildly severe damage to [his] spine" and that Dr. Young would try to get approval for surgery. *See Roberts' Affidavit (Dkt. No. 38-1)* at ¶ 5. By July of 2013, it was apparent that the epidurals were not having their desired effect. *See Babich Affidavit, supra* at ¶ 28. Dr. Young approved a surgery consult on July 23, 2013. *Id.* On August 14, 2013, Roberts was examined by Dr. Montalbano, a neurological surgeon, who requested that an MRI and X-rays be done on Roberts' spine. *See MR000023-24.* Those were done, and Dr. Montalbano examined Roberts again on December 4, 2013. At that exam, Dr. Montalbano found that the X-rays and MRI revealed evidence of severe stenosis that he felt could be helped with surgery. *See MR000019.* He did that surgery less than two weeks later, on December 17, 2013. *See MR000020.*

**Memorandum Decision & Order – page 5**

**LEGAL STANDARDS**

In this summary judgment proceeding, the Court must view the evidence in a light most favorable to Roberts.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The defendants bear the initial burden of demonstrating the absence of a genuine issue of material fact.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.2001) (en banc).  To carry this burden, they need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case.  *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).  This shifts the burden to Roberts to produce evidence sufficient to support a jury verdict in his favor.  *Id*. at 256–57.  Roberts must go beyond the pleadings and show by "affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

To state a claim under § 1983, Roberts must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law.  *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir.1991).  The government has an "obligation to provide medical care for those whom it is punishing by incarceration," and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983.  *Colwell v. Bannister,* 763 F.3d 1060, 1066 (9th Cir. 2014).  In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show "deliberate indifference" to his "serious medical needs."  *Id.*  This includes "both an objective standard – that the deprivation was serious

**Memorandum Decision & Order – page 6**

enough to constitute cruel and unusual punishment – and a subjective standard – deliberate indifference." *Id.*

To meet the objective element of the standard, a plaintiff must demonstrate the existence of a serious medical need. Such a need exists if failure to treat the injury or condition "could result in further significant injury" or cause "the unnecessary and wanton infliction of pain." *Id.*

The Court assumes that intense back pain is a "serious medical need." The focus therefore is on the second prong of the test – whether defendants were deliberately indifferent to Roberts' pain.

A prison official acts with "deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir.2004). A failure to respond to a prisoner's complaints of pain can be sufficient to support an Eighth Amendment claim. *Snow v. McDaniel*, 681 F.3d 978, 990 (9th Cir.2012), overruled in part on other grounds, *Peralta v. Dillard*, 744F.3d 1046 (9th Cir.2014). But a mere "difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference." *Id.* at 1058. Rather, to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment "was medically unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive risk to [the prisoner's] health." *Id.* Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Id.* at 1057.

**Memorandum Decision & Order – page 7**

## ANALYSIS

Roberts points out that Dr. Young viewed the same MRI that Dr. Babich had viewed, but in contrast to Dr. Babich, concluded that surgery was warranted. This is evidence, Roberts asserts, that Dr. Babich either misread or ignored the MRI, and hence was "deliberately indifferent" to his serious medical need.

But Dr. Babich was not the only physician who viewed that MRI and concluded that no surgery was warranted. As discussed above, that MRI was also viewed by Dr. Andrew, an orthopedic surgeon and outside specialist who practiced at a major hospital in the area. Dr. Andrew examined Roberts on two occasions – in February and April of 2013 – and concluded that the best approach was a conservative one that avoided surgery and substituted in its place three epidural injections.

Moreover, as discussed above, Dr. Cambier – another outside medical expert – read the X-rays of Roberts' spine just a few weeks after the fall and concluded that his spine looked the same as it did in X-rays taken about six months earlier. He found no evidence of any fractures or abnormalities, and no evidence of injury. *See MR000002.*

Thus, Dr. Babich was not relying only on his own hunches. He had opinions from two outside medical experts – Drs. Andrew and Cambier. Both of those opinions clearly supported Dr. Babich's conclusion to proceed with a conservative course of treatment that avoided surgery. Even assuming that Dr. Young disagreed with Dr. Babich about the need for surgery, a mere "difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference." *Toguchi,* 391 F.3d at 1058.

This is not a case like *Snow*. There, the prison physicians ignored the recommendations of two orthopedic specialists that the plaintiff's painful hip condition should be treated immediately with surgery because no alternative treatments would be effective. *Snow,* 681 F.3d at 988. Prison physicians ignored this advice for three years before approving surgery. *Id.* The District Court granted summary judgment to the prison physicians, but the Circuit reversed, holding that there were questions of fact over whether the prison physicians were deliberately indifferent to plaintiff's pain when they ignored the outside experts' call for surgery. *Id.*

*Snow* does not apply here. In contrast to the prison physician in *Snow,* Dr. Babich *followed* the recommendation of the outside expert – Dr. Andrew – to avoid surgery and treat Roberts instead with three epidural injections. Dr. Babich found further support in the opinion of Dr. Cambier, another outside expert, who found no evidence of fracture, injury, or abnormality in X-rays taken just weeks after Roberts' fall.

This conservative course of treatment followed by Dr. Babich did delay surgery, and Roberts suffered from his back pain during that time. But Dr. Babich had support from outside medical experts for his course of treatment. The Court finds as a matter of law that any delay in surgery caused by Dr. Babich did not constitute deliberate indifference.

Defendant Dr. Young took over from Dr. Babich in June of 2013. *See Babich Affidavit, supra* at ¶ 27. Within about two months, Dr. Young had approved Roberts for a consultation with a neurological surgeon, Dr. Montalbano, who ultimately performed the surgery. *Id.* at ¶ 28. Roberts complains that his surgery was not actually performed

**Memorandum Decision & Order – page 9**

for another four months on December 17, 2013. But that was a function of Dr. Montalbano's schedule as he had two pre-surgery meetings with Roberts on August 14, 2013, and December 4, 2013. After the August 14, 2013 examination, Dr. Montalbano wanted an MRI and X-rays done on Roberts, and that was approved the next day by Dr. Young. *Id.* at ¶ 30. Dr. Montalbano did not meet with Roberts again until December 4, 2013, and the surgery was about two weeks later.

This record shows conclusively that once Dr. Young took over as Regional Medical Director, he moved expeditiously to approve a consultation for Roberts with a neurological surgeon. He also quickly approved the MRI and second visit that the surgeon requested. Any delays caused by the surgeon's schedule cannot be attributed to Dr. Young. For all these reasons, the Court finds as a matter of law that Dr. Young did not cause any undue delays in obtaining surgery for Roberts that could constitute deliberate indifference to Roberts' pain.

Roberts is critical of the defendants' prescription of psychotropic medications instead of narcotics. But all the evidence in the record, discussed above, indicates that the pain medications prescribed for Roberts were commonly used for the treatment of back pain. There is no evidence to the contrary.

Roberts responds that his pain resulted from nerve damage, and that these medications are not commonly used for nerve damage. But there is no evidence in the record supporting that argument. An independent outside physician – Dr. Andrew – reviewed not only Robert's spinal MRI, but also his medications on two occasions and did not recommend any change to the drug regimen. *See MR000029 & 31* (Dr. Andrews'

**Memorandum Decision & Order – page 10**

notes listing all of Roberts' medications and stating that the list was "reviewed and reconciled with [Roberts]"). Given this state of the record, the Court finds as a matter of law that the defendants were not deliberately indifferent by prescribing non-narcotic pain medications for Roberts.

**Corizon Drug Policy**

Roberts alleges that Corizon had a policy of removing all narcotic pain medications and replacing them with psychotropic drugs. As discussed above, the record contains evidence that the drugs prescribed for Roberts – in combination with the epidurals – were commonly used for relief from back pain. There is no evidence to the contrary. Hence, even assuming Corizon had such a policy, it did not cause any constitutional deprivation in this case.

**Defendants Dr. Lossman & Dr. Gulick**

Defendants Dr. Lossman and Dr. Gulick seek dismissal on the ground that the record contains no evidence that they treated Roberts or played any role in the alleged denial of care. Roberts responds that both men told him that there was nothing wrong with his back. Assuming that allegation is true, it fails to rise to the level of a constitutional violation. Roberts points to no evidence that either man ever treated him, refused to treat him, or played any role in Corizon's alleged denial of care. For this independent reason, defendants Dr. Lossman and Dr. Gulick will be dismissed. *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir.2002) (holding that "[i]n order for a person acting under color of state law to be liable under § 1983 there must be a showing of personal participation in the alleged rights deprivation").

**Memorandum Decision & Order – page 11**

**Judicial Notice**

Roberts asks the Court to take notice of other lawsuits filed by other inmates complaining of the lack of medical care at the ISCI. The Court will do so. This does not aid Roberts, however, because there is no evidence in this case of deliberate indifference, and the treatment of other inmates does not establish that Roberts was mistreated.

**Ongoing Discovery**

The Court notes that the discovery deadline in this case is June 15, 2015. In a single sentence at the conclusion of his Statement of Undisputed Facts, Roberts argues that the motion for summary judgment is not "ripe as discovery has yet to be completed." He provides no further explanation of what discovery he wants to accomplish or what he hopes to find.

Rule 56(d) offers relief to a litigant who, faced with a summary judgment motion, shows the court by affidavit or declaration that "it cannot present facts essential to justify its opposition." *See* Fed.R.Civ.P. 56(d). To prevail under this Rule, Roberts must make "(a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists." *Emplrs. Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1129 (9th Cir.2004).

Roberts has not complied with Rule 56(d). He has failed to identify any specific information that he seeks in discovery that would warrant holding the motion for summary judgment in abeyance. Accordingly, the Court will deny his request for further discovery.

**Memorandum Decision & Order – page 12**

**Conclusion**

For all of these reasons, the Court finds as a matter of law that defendants Dr. Lossman, Dr. Gulick, Dr. Babich, Dr. Young, and Corizon LLC (named as Corizon Medical Services) were not deliberately indifferent to the serious medical needs of Roberts. The Court will accordingly grant their motion for summary judgment. Because a single defendant remains – Randy Blades – the Court will not dismiss the entire case.

**ORDER**

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for judicial notice (docket no. 37) is GRANTED.

IT IS FURTHER ORDERED, that the motion for summary judgment (docket no. 34) is GRANTED, and that the following defendants are dismissed from the case: (1) Dr. Lossman, (2) Dr. Gulick, (3) Dr. Babich, (4) Dr. Young, and (5) Corizon LLC (named as Corizon Medical Services).

DATED: September 22, 2015

_____
B. Lynn Winmill
Chief Judge
United States District Court